**TEAM SCANDIA, INC., Plaintiff,**

v.

**Marco GRECO, Defendant.**

No. IP 97–1956–C–B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 19, 1998.

Judy L. Woods, McTurnan & Turner, Indianapolis, IN, for Plaintiff.

Richard K. Howell, Rutan & Tucker, Costa Mesa, CA, R.C. Richmond, III, Sommer & Barnard, Indianapolis, IN, for Defendant.

### *ENTRY DENYING PLAINTIFF'S MOTION TO VACATE THE ARBITRATION AWARD*

BARKER, Chief Judge.

This matter comes before the Court on Plaintiff's Motion to Vacate the Arbitration Award, alleging that the arbitrator (1) exceeded his powers, (2) violated public policy, and (3) had a disqualifying conflict of interest. Defendant rejoins that (1) the parties' agreement prohibits judicial review of the arbitration award, (2) the arbitrator did not exceed his powers, and (3) the arbitrator did not have a disqualifying conflict of interest. For the following reasons, Plaintiff's Motion to Vacate the Arbitration Award is *DENIED*.

### I. *BACKGROUND*

In January of 1997, Defendant Marco Greco ("Greco"), a professional race car driver, entered into a contract (the "Agreement") with Plaintiff Team Scandia, Inc. ("Scandia"), whereby Greco agreed to pay $1,500,000 to Scandia in exchange for a "first rate, professional, winning-capable" Indy Racing League (IRL) program during the 1997 season. Among other things, the contract required that Scandia provide Greco with IRL approved engines. Pursuant to that requirement, Scandia ordered twelve Oldsmobile Aurora engines manufactured by General Motors Corporation (GM) for Greco and other drivers that Scandia supported. Unfortunately, Scandia did not have enough engines to meet its obligations to Greco during the

Indianapolis 500 race. The relationship soured and Scandia unilaterally terminated the contract on June 12, 1997. Thereafter, Greco filed a demand for arbitration, pursuant to the parties' agreement.

Terrill Albright ("Albright") was appointed arbitrator. Shortly thereafter, he disclosed that his firm, Baker & Daniels, represented GM in employment-related litigation and that he was personally involved in representing GM in a construction case in 1994. (Defendant's Exhibit D). Scandia promptly objected to Albright's appointment, contending that his relationship with GM constituted a disqualifying conflict of interest. After due consideration, the American Arbitration Association (AAA) rejected Scandia's request to replace Albright.

The arbitration proceedings thereafter commenced with Albright as the arbitrator. After five days of hearings, the admission of more than one hundred exhibits, and a transcript of more than 1,350 pages of testimony and argument, the arbitrator ruled in favor of Greco. First, the arbitrator found that Scandia's unilateral termination of the Agreement constituted a breach of contract. As a result of that breach, the arbitrator concluded:

> Greco was deprived of the opportunity to drive for Scandia in the last four races of the year, he was deprived of the opportunity to have his full fifteen days of testing at the various tracks, he was deprived of the ability to obtain qualifying awards, and he was deprived of his ability to utilize the points of the Scandia car in obtaining the benefits of a higher point fund distribution for both year-end IRL series driver prize money and the driver entry money.

Defendant's Exhibit A at 4–5.

The arbitrator also found that Scandia breached the Agreement by failing to put forth "its absolute best efforts ... to perform its services at a first-rate, professional level." At the arbitration proceeding, Scandia argued unsuccessfully that mechanical defects in GM's engines—not Scandia's lack of effort—caused Greco to be inadequately supplied with engines at the Indianapolis 500. In rejecting that argument, the arbitrator reasoned:

> The conduct of Scandia which is of the most concern in analyzing this case is that Scandia voluntarily undertook the obligations to support the efforts of five drivers during the Indy 500 at a time when it had experienced horrible problems with the Aurora engines ....

Defendant's Exhibit A. The arbitrator found that the breach resulted in Greco's loss of sponsorship, which amounted to $150,000 in damages. The total amount of damages awarded Greco in the arbitration was $330,615.00 plus costs and attorney's fees.

## II. DISCUSSION

The "scope of review of a commercial arbitration award is grudgingly narrow." *Eljer Manufacturing, Inc. v. Kowin Development Corp.*, 14 F.3d 1250, 1253 (7th Cir. 1994).

> A party's choice to accept arbitration entails a trade-off. A party can gain a quicker, less structured way of resolving disputes; it may also gain the benefit of submitting its quarrels to a specialized arbiter, which ... knows the customs and lore of an industry first-hand. Parties lose something, too: the right to seek redress from the courts for all but the most exceptional errors at arbitration. That is the deal [Scandia and Greco] struck for arbitration.

*Dean v. Sullivan*, 118 F.3d 1170, 1173 (7th Cir.1997) (citations omitted). The Seventh Circuit has held that "[f]actual or legal errors by arbitrators—even clear or gross errors—do not authorize courts to annul awards." *Flexible Manufacturing Systems Pty. Ltd. v. Super Products Corp.*, 86 F.3d 96, 100 (7th Cir.1996) *quoting Gingiss International, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir.1995). Nor does insufficiency of the evidence constitute a proper ground for setting aside an arbitration award. *Id.* The Federal Arbitration Act ("FAA") provides the proper grounds for modification of an arbitrator's award, including:

> (1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10(a).[1] "The grounds for setting aside arbitration awards are exhaustively stated in the [FAA]." *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir.1994).[2]

## A) AGREEMENT PERMITS LIMITED REVIEW OF ARBITRATION AWARD

We first address whether judicial review of the arbitration award is permissible. Plaintiff contends that judicial review of the arbitration award is prohibited, pursuant to the parties' agreement that the arbitration award is "binding, final and non-appealable." Defendant rejoins that an agreement to "final," "binding" or even "non-appealable" arbitration does not waive or prohibit challenges to an award on the statutorily authorized grounds.

The purpose of the FAA is to ensure that private arbitration agreements are enforced to their terms. *See Volt Info. Sciences, Inc. v. Board of Trustees of Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). Courts have allowed parties to "stipulate to whatever procedures they want to govern the arbitration of their disputes." *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 709 (7th Cir.1994). Arbitration agreements are permitted to define the authority of the arbitrator and some courts have even allowed arbitration agreements to dictate the standard of review. *See e.g. Lapine Tech. Corp. v. Kyocera Corp.*, 130 F.3d 884 (9th Cir.1997). However, it has long been established that an agreement to a "final," "binding," and "non-appealable" arbitration award does not prohibit appeals based upon the arbitrator's abuse of authority or bias. *Dean v. Sullivan*, 118 F.3d 1170, 1171 (7th Cir.1997); *Tabas v. Tabas*, 47 F.3d 1280, 1288 (3rd Cir.1995); *Goodall–Sanford, Inc. v. United Textile Workers*, 233 F.2d 104, 107 (1st Cir.1956), *aff'd*, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957). It is presumed that the parties intended to relinquish their right to appeal the merits of the dispute, not their right to appeal an arbitration award that resulted from the arbitrator's abuse of authority or bias. Accordingly, judicial review of the arbitrator's award is permissible on the grounds set forth in the FAA.

Scandia seeks to vacate the arbitrator's award on the grounds that the arbitrator (1) exceeded his powers, (2) violated public policy, and (3) had a disqualifying conflict of interest. These are grounds for a permissible appeal under the FAA, and so the review shall proceed.

1. Section 11 of the FAA provides three additional grounds for modifying an arbitration award that are irrelevant to this case. 9 U.S.C. § 11(a).

2. Some courts allow modification where there was a "manifest disregard of the law" by the arbitrator. However, the Seventh Circuit in *Baravati, supra* rejected this judicially-created ground for modification.

Notably, it is not uncommon for the Seventh Circuit to award sanctions in appeals seeking to overturn arbitral awards when the appellee has no legitimate statutory basis for appeal. *See e.g. Flexible Manufacturing Systems Pty. Ltd.*, 86 F.3d

96, 101 (7th Cir.1996); *Widell v. Wolf*, 43 F.3d 1150, 1152 (7th Cir.1994); *Chicago Typographical Union v. Chicago Sun–Times, Inc.*, 935 F.2d 1501, 1506–07 (7th Cir.1991); *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192–1203 (7th Cir.1987). In so doing, the Seventh Circuit has emphasized that "[t]he promise of arbitration is spoiled if parties disappointed by its results can delay the conclusion of the proceeding by groundless litigation in the district court followed by groundless appeal to this court; we have said repeatedly that we would punish such tactics and we mean it." *Flexible*, 86 F.3d at 101 (citations omitted).

## B) *THE ARBITRATOR DID NOT EX-CEED HIS AUTHORITY*

Scandia contends that the arbitrator exceeded his authority by (1) awarding damages for Scandia's failure to put forth its best efforts, (2) failing to reduce the awarded damages by the amount Greco saved because of the breach of contract, and (3) awarding speculative damages.

### 1) *THE ARBITRATOR DID NOT EX-CEED HIS AUTHORITY IN AWARDING DAMAGES FOR SCAN-DIA'S FAILURE TO USE BEST EF-FORTS*

Scandia argues that the arbitrator's $150,000 award for Scandia's failure to use its best efforts includes (1) unauthorized consequential damages, (2) unauthorized damages for loss of reputation, and (3) unauthorized damages for Scandia's "not [hav]ing engines available." Greco responds that these issues involve the arbitrator's interpretation of the Agreement and the law, which are non-reviewable. Alternatively, Greco maintains that (1) the alleged consequential damages were, in fact, actual damages, (2) the award was not based on Greco's loss of reputation, and (3) Greco did not have to miss a race in order to be entitled to recover damages.

#### a) *Award for Loss of Sponsorship Did Not Exceed Arbitrator's Authority*

 Scandia contends that the arbitrator exceeded his authority by awarding damages for Greco's loss of sponsorship. According to Scandia, those damages constitute consequential damages, which the contract expressly prohibits. Greco responds that (1) Scandia's argument addresses the arbitrator's interpretations of the contract and the law, which are not reviewable, and (2) Greco's loss of sponsorship constitutes an actual damage.

The arbitration agreement restricts the type of damages which the arbitrator may award, providing:

> Any such award of damages shall be limited to actual damages as derived from the terms and conditions of this Agreement (this is, there shall be no award of punitive damages, consequential damages, loss of reputation, purported damage to sponsors, and/or the like).

Acknowledging the prohibition on consequential damages, the arbitrator concluded that the award for Greco's loss of sponsorship was permissible because "it [was] a direct loss to Greco, not consequential damages," (Defendant's Exhibit A, at 7).

 The agreement's prohibition on consequential damages is unambiguous and the arbitrator's written decision demonstrates his knowledge and acceptance of that restriction. Thus, there is no dispute regarding the scope of the arbitrator's power to award damages under the agreement.[3] The only dispute regards whether the arbitrator correctly interpreted Indiana law in concluding that the loss of sponsorship was not a consequential damage.

Scandia requests that this court review de novo whether the loss of sponsorship constituted a consequential damage. Such a probing review of the arbitrator's decision is exactly what the Seventh Circuit has cautioned reviewing courts not to do. *See Dean v. Sullivan*, 118 F.3d 1170, 1173 (7th Cir.1997). The arbitrator had authority to interpret the law and the parties' agreement and in doing so, he respected the limits on that authority by awarding only those damages that he deemed actual. *See Chicago Newspaper Publishers' Association v. Chicago Web Printing Pressmen's Union No. 7*, 821 F.2d 390, 397 (7th Cir.1987). The arbitrator's written opinion is thoughtful and consistent. Indeed, there is nothing in the record to suggest that the award was drawn from the

---

**3.** While "courts grant arbitrators considerable leeway when reviewing most arbitration decisions," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995), it is a longstanding principle that "the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs., Inc. v. Communica-* *tions Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *see also Geneva Securities, Inc. v. Johnson*, 138 F.3d 688, 691 (7th Cir.1998). Here, whether the parties agreed to arbitrate the issue of damages is undisputed. The only dispute regards the arbitrator's interpretation of Indiana law of damages.

arbitrator's own sense of justice, rather than the parties' agreement.[4]

The Seventh Circuit in *Eljer Manufacturing, Inc. v. Kowin Development Corp.,* 14 F.3d 1250, 1255 (7th Cir.1994), addressed a similar claim. In that case, Eljer sought to vacate the arbitrator's award of future lost profits, contending that the applicable law forbade such damages in that case. The Seventh Circuit rejected the argument, holding that the arbitrator's decision was an interpretation of the law and that "mere error in the interpretation of the law (as opposed to failure to decide in accordance with relevant provisions of law) does not provide grounds for disturbing an arbitration award." *Id.* at 1255. Similarly, in the instant case, the arbitrator, in determining that the loss of sponsorship was not a consequential damage, made a legal determination and in doing so operated within his clear authority. There is no evidence that he "fail[ed] to decide in accordance with relevant provisions of [Indiana] law."

We withhold comment on the legal and factual correctness of the arbitrator's award because the arbitration award for Greco's loss of sponsorship clearly meets the requirements which our limited power of review imposes. The United States Supreme Court and the Seventh Circuit have repeatedly held that courts must not visit the merits of the arbitrator's decision and thus "allow the disappointed party to bring his dispute into court by the back door, arguing that he is entitled to appellate review of the arbitrators' decision." *Baravati v. Josephthal, Lyon & Ross, Inc.,* 28 F.3d 704, 706 (7th Cir.1994); *see also United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 369, 98 L.Ed.2d 286 (1987).[5] Accordingly, Scandia's Motion to Vacate the Arbitration Award of damages for Greco's loss of sponsorship is *DENIED.*

### b) *Arbitrator's Award Not Based on Loss of Reputation*

Scandia also contends that the loss of sponsorship damages constitute an award for loss of reputation, which the agreement ex-

4. Scandia's position would permit parties to appeal an arbitrator's award for exceeding authority based on the arbitrator's misinterpretation of the law. Such an expansive review would undermine the purpose of arbitration: a speedy, efficient, and inexpensive resolution of a claim. *See Matteson v. Ryder System, Inc.,* 99 F.3d 108, 113 (3rd Cir.1996).

5. Scandia cites *Georgia Power Co. v. International Brotherhood of Electrical Workers, Local 84,* 995 F.2d 1030 (11th Cir.1993), in support of its position. In that case, the arbitration panel initially rejected the union's request for compensatory and punitive damages, stating that (1) there were no damages stemming from the company's breach of contract, and (2) there was no evidence of willful or wanton conduct by the company. Thereafter, based on no additional facts or law, the arbitration panel reconsidered its decision and awarded the union damages which it labeled compensatory. That award contradicted the panel's own factual and legal conclusions, which made it clear that the damages were unrelated to the breach of contract. *Id.* at 1031. The District Court vacated the award and the Eleventh Circuit affirmed, holding that the damages were punitive and, based on the panel's conclusion that the company's conduct was not willful and wanton, unjustified. *Id.* at 1032.

*Georgia Power* does not control and is easily distinguishable from the instant case. First, the record in *Georgia Power* supported the inference that the arbitration panel knew the law, but

deliberately disregarded it. Here, there is no indication that the arbitrator knew that the loss of sponsorship was a consequential damage under Indiana law, but deliberately ignored the law in making his decision. Second, the panel in *Georgia Power* interpreted the parties' agreement and the law as not justifying compensatory damages, but nevertheless labeled the union's damages "compensatory *.*" Conversely, the arbitrator in the instant case never made contradictory conclusions regarding whether the loss of sponsorship was a consequential damage. Nor did he make any factual or legal conclusions that made it clear that the loss of sponsorship was a consequential damage. In short, *Georgia Power* involved an arbitration award that clearly did not draw its essence from the parties' agreement, whereas the record in this case shows that the arbitration award was the result of interpreting the parties' Agreement and the law. Finally, *Georgia Power* was decided by the Eleventh Circuit, not the Seventh. Therefore, we are not bound by that decision. Indeed, the Seventh Circuit seems to provide arbitrators with greater deference than does the Eleventh Circuit. *Compare Montes v. Shearson Lehman Brothers, Inc.,* 128 F.3d 1456, 1461 (11th Cir.1997)(accepting "manifest disregard of law" as a proper ground for vacating award) *with Baravati v. Josephthal, Lyon & Ross, Inc.,* 28 F.3d 704, 706 (7th Cir.1994)(rejecting "manifest disregard of the law" as ground for vacating, in part, because it allows too much court review).

pressly prohibits. An examination of the record, however, makes it is clear that the $150,000 awarded to Greco for the loss of his sponsorship reflected the actual money he lost, not his loss of reputation: Accordingly, this claim is denied.

c) *Arbitrator Did Not Exceed His Authority by Awarding Damages for Scandia's Not Having Engines Available*

█] Scandia also contends that the arbitrator's award for Scandia's failure to use best efforts was unauthorized because "the Agreement prohibited any award for damages for Scandia's not having engines available unless an engine shortage actually caused Greco to miss a race—and Greco missed no races." Plaintiff's Memorandum in Support of its Motion at 16. According to Scandia, the arbitrator misinterpreted the parties' agreement and should not have assessed damages. Greco replies that the arbitrator's interpretation of the contract is nonreviewable.

█ "The courts are in agreement that arbitrators do not exceed their powers by misconstruing a contract." *National R.R. Pass. Corp. v. Chesapeake & Ohio Ry.*, 551 F.2d 136, 142 (7th Cir.1977). The arbitrator clearly had the authority to interpret the contract as it did and assess the damages accordingly. *Flexible Manufacturing Systems Pty. Ltd. v. Super Products Corp.*, 86 F.3d 96, 100 (7th Cir.1996). Whether the arbitrator misinterpreted the agreement is beyond the scope of our review. *See Chrysler Motors Corp. v. International Union*, 959 F.2d 685, 688 (7th Cir.1992). Therefore, the arbitrator's award stands.

2) *ARBITRATOR DID NOT EXCEED HIS AUTHORITY BY AWARDING DAMAGES FOR LOST RACE WINNINGS, LOST TESTING DAYS, AND LOST POINTS*

█ The arbitrator awarded Greco damages totaling $164,000 for lost race winnings ($54,000), lost testing days ($60,000), and lost points fund prizes ($50,000) resulting from Scandia's breach of contract. Scandia contends that these damages were speculative and unauthorized under Indiana law.

This is clearly an issue of legal interpretation which we will not vacate unless the arbitrator exceeded his authority or the interpretation was in some way dishonest. The parties' agreement provided the arbitrator authority to determine Greco's damages. Damages from the lost testing days were based on the rental rates for testing days; damages from the lost points were based on an analysis of Scandia's success after Greco's separation from the organization; and damages from Greco's loss of sponsorship were based on a percentage of the value of the Greco/Scandia contract. The arbitrator was clearly within his authority to assess these damages, and we therefore will not intrude upon his specific legal or factual conclusions. *See Flexible Manufacturing Systems Pty. Ltd. v. Super Products Corp.*, 86 F.3d 96, 100 (7th Cir.1996)(arbitrator has authority to determine the amount of damages).

3) *Arbitrator Did Not Exceed His Authority by Not Reducing the Damages by the Amount Greco Allegedly Saved*

Scandia contends that the arbitrator exceeded his authority by failing to reduce Greco's damages for lost testing days, lost points, and loss of sponsorship by the amount that Greco saved because of the breach of contract. Greco in response argues that (1) the arbitrator's award is unreviewable, (2) the arbitrator's award accounted for Greco's savings, and (3) even if it did not, Greco did not actually save anything.

Scandia's argument does not address whether the arbitrator exceeded his authority. Indeed, the arbitrator clearly had authority to assess actual damages stemming from Scandia's breach of contract. The actual dispute is over whether the arbitrator properly applied Indiana law on damages when he determined the amount of damages. As previously discussed, whether the arbitrator misinterpreted the law is beyond our extremely limited scope of review. *Flexible Manufacturing Systems Pty. Ltd, supra.* Therefore, Scandia's Motion to Vacate the Arbitration Award on the grounds that the arbitrator exceeded his authority is *DENIED.*

## C) ARBITRATION AWARD WILL NOT BE VACATED FOR ALLEGEDLY VIOLATING PUBLIC POLICY AND "MANIFESTLY DISREGARDING THE LAW"

### 1) AWARD DID NOT VIOLATE PUBLIC POLICY

██ Scandia. contends that the arbitration award violated public policy by (1) putting Greco in a better position than if the contract had not been breached, and (2) by awarding Greco more damages than he could have received in a judicial proceeding involving the parties' dispute.

"The 'public policy' defense to enforcement ... 'derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act, and is further justified by the observation that the public's interests in confining the scope of private agreements to which it is not a party will go unrepresented unless the judiciary takes account of those interests when it considers whether to enforce such agreements." ' Widell v. Wolf, 43 F.3d 1150, 1151 (7th Cir.1994) quoting United Paperworkers Intern. Union, AFL–CIO v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).

Awarding damages to Greco for a breach of contract clearly "does not lend a hand to an illegal act." Id. Nor does it serve the public interest to deny enforcement of the award. Scandia's public policy argument is simply a rehash of its previous contentions and a thinly disguised attempt to argue the merits of the claim. Permitting such a review would defeat the primary purpose of arbitration, that is, to increase efficiency by reducing litigation. We decline Scandia's invitation to revisit the merits and DENY Scandia's Motion to Vacate the Arbitration Award on Public Policy grounds.

### 2) "MANIFEST DISREGARD OF LAW" IS NOT AN INDEPENDENT BASIS FOR VACATING AN ARBITRATION AWARD

██] Scandia also contends that the arbitrator's award of damages constituted a "manifest disregard for the law." None of Scandia's arguments, however, are new; they simply are a repackaged presentation of the damages issues already discussed. Moreover, the Seventh Circuit does not recognize an arbitrator's. "manifest disregard for the law" as an independent basis for vacating the arbitration award.

Although "[a] number of courts ... have said that they can set aside arbitral awards if the arbitrators exhibited a. 'manifest disregard of the law,' " the Seventh Circuit in Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 706 (7th Cir.1994), rejected this non-statutory ground for vacating an arbitration award. Id. In doing so, it held:

"If it is meant to smuggle review for clear error in by the back door, it is inconsistent with the entire modern law of arbitration. If it is intended to be synonymous with the statutory formula that it most nearly resembles—whether the arbitrators 'exceeded their powers'—it is superfluous and confusing. There is enough confusion in the law. The grounds for setting aside arbitration awards are exhaustively stated in the statute."

Id. at 706. Since Baravati, certain other circuits have continued to accept "manifest disregard of the law" as an independent basis upon which to vacate an arbitration award. See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys 'R' Us, Inc., 126 F.3d 15, 23 (2nd Cir.1997); Cole v. Burns International Security Services, 105 F.3d 1465, 1487 (D.C.Cir. 1997). In our circuit, however, Baravati remains good law, and we are bound by it. Therefore, Scandia's Motion to Vacate the Arbitration Award on the ground that the arbitrator "manifestly disregarded the law" is DENIED.

## D) THE ARBITRATOR'S RELATIONSHIP WITH GENERAL MOTORS WAS DISCLOSED AND WAS NOT A DISQUALIFYING CONFLICT OF INTEREST

Finally, Scandia contends that Arbitrator Albright's relationship with GM constituted a disqualifying conflict of interest and caused an impermissible appearance of bias. Greco rejoins that (1) Albright disclosed his relationship with GM prior to the arbitration, (2)

Albright was not representing GM at the time of the proceedings, and (3) GM's connection to this dispute was minimal, at best.

] "To set aside an award for arbitration partiality, '[t]he interest or bias ... must be direct, definite and capable of demonstration rather than remote, uncertain or speculative.'" *Health Services Management Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir.1992) *quoting United States Wrestling Federation v. Wrestling Division of the AAU, Inc.*, 605 F.2d 313, 318 (7th Cir.1979). "The mere fact that there was some prior business relationship between [one of the litigants] and the arbitrator is not in and of itself sufficient to disqualify [him or her] as the arbitrator." *Id.*

] Several reasons compel us to conclude that the arbitrator's relationship with GM did not constitute a disqualifying conflict of interest. First, the arbitrator's relationship was not with a directly-involved litigant. Rather, it was with a third party who was not bound by the arbitration proceedings. Second, the arbitrator disclosed his relationship with GM prior to the commencement of the arbitration proceedings and the AAA promptly reviewed the issue and concluded that the relationship did not justify replacing the arbitrator. Third, at the time of the arbitration, Albright had not actively represented GM since 1994 and that representation was only a small portion of his practice. Finally, the arbitrator's decision that Scandia violated the best efforts provision was based on solid grounds, with no indication that it was improperly influenced by GM's alleged interest.[6] Indeed, the arbitrator's decision did not necessarily reflect favorably on GM. Albright did not conclude that the GM engines were free of defects. Rather, he concluded that Scandia knew of the defects, and nevertheless over-extended itself, in violation of the Agreement's best efforts provision. Accordingly, Scandia's Motion to Vacate the Arbitration Award because the arbitrator had a disqualifying conflict of interest is *DENIED.*

## III. CONCLUSION

For the aforementioned reasons, we leave the arbitrator's award undisturbed. Scandia's Motion to Vacate the Arbitration Award for exceeding the arbitrator's authority is *DENIED* because the arbitrator's interpretations of the agreement and the law were within his authority. Scandia's Motion to Vacate the Arbitration Award for manifestly disregarding the law is *DENIED* because (1) the arbitrator did not exceed his authority and (2) the Seventh Circuit does not recognize a manifest disregard of the law as a proper ground for vacating an arbitration award. Scandia's Motion to Vacate the Arbitration Award on public policy grounds is also *DENIED* because the award was not illegal and was not contrary to the public's interest. Finally, Scandia's Motion to Vacate the Arbitration Award on conflict of interest grounds is *DENIED* because the arbitrator's relationship with GM did not constitute a disqualifying conflict of interest.

---

**6.** Scandia claims that the appearance of impropriety alone justifies vacating the arbitration award on conflict of interest grounds. This argument is unavailing. Any appearance of bias in the arbitration was minimal and insufficient to disqualify Albright. *See Health Services Management Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir.1992)("[t]he mere appearance of bias that might disqualify a judge will not disqualify an arbitrator").