**In the Matter of the Arbitration Between ROLLINS, INC. and Orkin Inc., Petitioners,**

**and**

**Collier BLACK, Respondent.**

**Case No. 3:03–cv–772–J–99MMH.**

United States District Court, M.D. Florida, Jacksonville Division.

Aug. 20, 2004.

Douglas B. Brown, Michael R. Holt, Darren Keith McCartney, Rumberger, Kirk & Caldwell, PA, Orlando, FL, William J. Nissen, Sidley, Austin, Brown & Wood, Chicago, IL, for Petitioners.

Alan S. Wachs, Christopher Todd Harris, Leslie A. Wickes, Volpe, Bajalia, Wickes, Rogerson & Wachs, Daniel Kearney Bean, Holland & Knight, LLP, Jacksonville, FL, Christian D. Searcy, Harry A. Shevin, Sean C. Domnick, Searcy, Denney, Scarola, Barnhart & Shipley, PA, West Palm Beach, FL, for Respondent.

### ORDER

HARVEY E. SCHLESINGER, District Judge.

Before the Court are Respondent's Motion to Confirm Arbitration Award (Doc. No. 10, filed October 24, 2003); Petitioner's Response (Doc. No. 32, filed November 21, 2003); Petitioner's Amended Motion to Vacate Arbitration Award (Doc. No. 25. filed November 3, 2003); Respondent's Response (Doc. No. 40, filed December 10, 2003); Petitioner's Motion to Vacate Second Arbitration Award (Doc. No. 33, filed November 21, 2003); Respondent's Response (Doc. No. 43, filed December 12, 2003); Petitioner's Motion to Vacate Third Award (Doc No 47, filed February 19, 2004); Respondent's Response (Doc. No. 54. filed March 16, 2004); Respondent's Amended Motion to Confirm Arbitration Award (Doc. No. 56, filed April 26, 2004); and finally Petitioner's Response (Doc. No. 57, filed May 10, 2004).

Also, there are several requests for oral argument: Petitioner's Request for Oral Argument (Doc. No. 20, filed October 29, 2003); Petitioner's Motion for Oral Argument on the Motion to Vacate Second Arbitration Award (Doc. No. 35, filed November 21, 2003); Petitioner's Motion for Oral Argument on the Motion to Vacate Third Arbitration Award (Doc. No. 50, filed February 19, 2004); all of which are **DENIED.**

### I. Background

Pursuant to the Parties' contract, they engaged in arbitration administered by the American Arbitration Association (AAA) to settle disputes arising from their contract, and "[t]he award of the arbitrators issued pursuant hereto shall be final, binding and non-appealable." The facts of the underlying dispute are not germane to this decision; suffice it to say, that Respondent was not satisfied with Petitioners' pest control services.

The Arbitration Panel heard from both Parties from July 28 to August 5, 2003 and issued several relevant rulings. On September 4, 2003, AAA faxed the Parties a copy of what the Panel called "Interim Arbitration Findings and Award" (Interim Award).[1] In the Interim Award, the Panel found in favor of Respondent on Count I, Breach of Contract, and Count IV, Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 (FDUTPA). The Panel found in favor of Petitioners on the remaining counts, which the Panel did not list but are: Count II, Civil Remedies for Criminal Acts; Count III, Misleading Advertisement; Count V. Declaratory Relief; Count VI, Negligence; Count VII, Fraud; Count VIII, Agency; Count IX, Joint Venture; Count X. Joint Enterprise; and Count XI, Alter Ego. The Panel also found in favor of Respondent on Petitioners' counterclaim. The Panel awarded Respondent $750,000.00 in compensatory damages, without specifying under which count, and $2,250,000.00 in punitive damages under FDUTPA. Additionally, the Panel found that Respondent was entitled

---

1. The Panel signed the Interim Award on August 27, August 30, and September 3, 2003.

to attorneys' fees under the contract and under FDUTPA, but the amount of attorneys' fees was to be determined at a later date. The Panel concludes with the following two sentences: "This Award shall be paid within thirty (30) days from the date of this signed Award. This Award shall remain in full force and effect until such time as a final Award is rendered."

On November 12, 2003, the Panel, *sua sponte*, issued "Supplemental Interim Arbitration Findings and Award" (Supplemental Award).[2] In the Supplemental Award, the Panel found for the Respondent on Count I and Count IV, as it had done in the Interim Award, but the Panel also found in favor of Respondent on three additional counts: Count VI, Negligence; Count VII, Fraud; and Count XI, Alter Ego. The Panel again found in favor of Petitioner on the remaining claims and for the Respondent on the counterclaim. The Panel again awarded $750,000.00 in compensatory damages without specifying to which count the award was pursuant. The Panel also again awarded $2,250,000.00, but this time did not state its basis for the award of punitive damages. Like the Interim Award, the Supplemental Award awarded Respondent attorneys' fees in an amount to be determined later. The Supplemental Award does not contain as much detail regarding the justification for the award of punitive damages, but does provide several reasons for the punitive damages. The Supplemental Award concludes with the same two sentences as the Interim Award.

In early December of 2003, the Panel issued what is entitled "Award of the Arbitrators" (Third Award). In the Third Award, the Panel awarded Respondent at-

torneys' fees of $975,000.00 and fees and costs of $189,902.00. The Panel also concluded that Petitioners would bear the administrative fees and expenses of the AAA which totaled $88,783.29. Upon Respondent's motion, the Panel clarified the Third Award to incorporate the Interim and Supplemental Awards. After the Interim Award but before the Supplemental Award. Petitioners filed suit in this Court seeking to vacate the Interim Award.

## II. Standard of Review

▮ Judicial review of completed arbitration is limited, and there is a presumption that arbitration awards will be confirmed. *See Booth v. Hume Publ'g, Inc.*, 902 F.2d 925, 932 (11th Cir.1990). Pursuant to the Federal Arbitration Act (FAA), a court is to vacate an award when 1) the award was procured by corruption, fraud, or undue means; 2) there was evident partiality or corruption; 3) the arbitrators were guilty of misconduct in refusing to hear evidence, postpone a hearing, or other misbehavior that prejudiced a party; or 4) the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award was not made. 9 U.S.C. § 10(a)(1–4). A court may, however, correct or modify an award when 1) there was an "evident material miscalculation" of "evident material mistake" in the description of a person or thing; 2) the arbitrators ruled on a matter not presented to them; or 3) the award is imperfect in matter of form not affecting the merits of the controversy. 9 U.S.C. § 11(a-c). Also, a court is to vacate an award entered in "manifest disregard of the law" or if the award is irrational or arbitrary and capricious[3]. *Montes v.*

---

**2.** The Supplemental Award was faxed from a Panel member's law firm and not through AAA and was signed on November 11 and 12, 2003.

**3.** Based on a misinterpretation of *Team Scandia, Inc. v. Greco*, 6 F.Supp.2d 795, 798 (S.D.Ind.1998), Respondent argues that the Court should limit its review only to the statutory basis. *Team Scandia* court did not hold

*Shearson Lehman Bros., Inc.*, 128 F.3d 1456, 1460–62 (11th Cir.1997): *Ainsworth v. Skurnick*, 960 F.2d 939, 941 (11th Cir. 1992). A panel manifestly disregards the law when the record indicates that the panel knew the law and disregarded it. *See O.R. Sec. Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 747 (11th Cir. 1988). Manifest disregard for the law is distinguished from a mere error in interpreting the law, which does not justify reversal. *See Montes*, 128 F.3d at 1460.

## III. Analysis

Before a discussion of the merits of the Panel's awards, the Court must first decide several preliminary issues: whether the Court has the authority to review the Panel's decision and whether the Supplemental Award is a valid award.

### A. Review of a Final, Binding, and Non-appealable Award

■ As a threshold matter, Respondent argues that the Court does not have jurisdiction over this case, because the Parties agreed that the Panel's award was binding, final, and non appealable. The Court disagrees. Courts have consistently respected the wishes of parties when they contract to be bound by certain provisions and particular methods of arbitration. *See First Options of Chicago v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (finding that arbitration is a matter of contract between the parties); *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 934 (10th Cir.2001) (holding that parties are free to negotiate arbitration agreements and that the primary purpose of the FAA is to ensure judicial enforcement of private agreements); *Gateway Techs., Inc.*

*v. MCI Telecomm. Corp.*, 64 F.3d 993, 996–97 (5th Cir.1995) (enforcing modified scope of review as agreed to by the parties). However, several circuit and district courts, although not in the Eleventh Circuit, have held that the words final, binding, and non-appealable in an arbitration agreement do not bar judicial review of a panel's decision. *See Dean v. Sullivan*, 118 F.3d 1170, 1171 (7th Cir.1997) (holding that even though final and binding arbitration must be just that if arbitration is to serve its purpose, final and binding does not preclude all judicial review); *Goodall–Sanford v. United Textile Workers of America, AFL, Local 1802*, 233 F.2d 104, 107 (1st Cir.1956) (aff'd, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031); *Baugher v. Dekko Heating Technologies*, 202 F.Supp.2d 847, 850 (N.D.Ind.2002); *Team Scandia, Inc. v. Greco*, 6 F.Supp.2d 795, 798 (S.D.Ind.1998); *see also Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co.*, 415 F.2d 403, 412–13 (5th Cir.1969) (holding that finality is a "mirage" if used to preclude judicial review of an *agency's* decision). Although limited, judicial review is necessary to prevent "runaway arbiters."[4] *Dean*, 118 F.3d at 1171. Accordingly, the Court will review the Panels decisions under the limited review as outlined by case law and in the FAA.

### B. Effect of Supplemental Award

Next, the Court turns to the Supplemental and Third Award and whether the Panel exceeded its authority under the arbitration rules and the doctrine of functus officio.

---

that review was limited only to a statutory basis; it held that it will review a "final, binding, non-appealable" arbitration award using the statutory basis, but did not comment on judicially-created grounds for vacating an award. *Id.*

4. Respondent argues that Petitioners drafted the contract, which should be construed against them. However, there is no ambiguity in the contract, and review of arbitrators' decisions is a policy decision, separate from principles of contract interpretation.

### 1. Rules of the AAA.

The Panel issued two awards, the Interim and Supplemental Awards, that are contradictory in fundamental ways. Rule 46 of the AAA allows a panel to correct "any clerical, typographical, or computational errors in the award," but "[t]he arbitrator is not empowered to redetermine the merits of any claim already decided." Rules and Procedures of the American Arbitration Association, available at www.adr.org.[5] In the Supplemental Award, the Panel redetermined the merits of several claims before it, and in the process, the Panel exceeded its authority under Rule 46.

Rule 43 of the AAA permits an arbitrator to make interim, interlocutory, and partial rulings. The contradictory awards do not fall within the purview of Rule 43. The Interim Award was not interim as used the term is used in Rule 34. *See* n. 5, *supra.* The Interim Award was not partial, as it conclusively settled all aspects of the case. And the Interim Award was not interlocutory,[6] because it was not temporary and again conclusively resolved all aspects of the case. *See infra* III(B)(2)(a).

### 2. The doctrine of Functus Officio

■ The doctrine of functus officio (Latin for "office performed") prevents an arbitrator from revising a final award. *See Glass, Molders v. Excelsior Foundry Co.,* 56 F.3d 844, 845 (7th Cir.1995) (Posner, C.J.). Judges created this doctrine based on a concern that arbitrators are not shielded from improper ex parte communication and pressure after making a decision and performing their office. *Id.* at 847. According to Judge Posner, the doctrine is "riddled with exceptions ... [and] hanging on by its fingernails." *Id.* at 846. Regardless of its deficiencies and possible impending demise, the Court will apply the doctrine in this case. First, the Court must decide if the Interim Award was a final award. If so, the court must then determine what are the exceptions to the doctrine and whether the Supplemental Award and Third Award qualify as an exception.

### a. Finality of Interim Award

■ A court is to determine whether an award is final based on two factors: whether the award indicates that it is final and whether the panel intended the award to be final. *Legion Ins. Co. v. VCW, Inc.,* 198 F.3d 718, 720 (8th Cir.1999).[7] Additionally, an award cannot be final if there are significant issues left to be determined, but an award does not have to be final in all respects to be a final award. *Id.* Although labeled "interim," the Court finds that Panel intended to make the Interim Award final. The Interim Award unequivocally disposed of all of the Respondent's Counts, Petitioners' Counterclaim, and awarded damages. Admittedly, the final two sentences of the Interim Award seemingly contradict each other. On one hand the award is to be paid within thirty days, and on the other the award shall remain in full force and effect until a final award is rendered. The Court interprets those sentences to mean that the Interim Award is

---

**5.** Rule 34 of the AAA provides an arbitrator with the power to make interim awards, but that rule contemplates the interim award "for the protection or conservation of property and disposition of perishable goods." *Id.* Thus, Rule 34 does not provide a basis for conclude that the Interim award is interim and not final.

**6.** Interlocutory meaning "interim or temporary, not constituting a final resolution of the whole controversy." *See* Garner, *Black's Law Dictionary* 7th Ed. 819.

**7.** The Court thinks that test repetitive, because the panel's intent can only be gleaned from whether the award indicates that it is final.

final, but that the Panel will issue a final award that includes the issue of attorneys' fees.

The Interim Award did not dispose of all issues, as the Panel explicitly stated that it would determination attorneys' fees at a later date, but the Court finds that the issue of attorneys' fees is not so significant to make the Interim Award anything less than final. Additionally, the Panel issued an Order Setting Procedure for Determination of Attorneys' Fees, signed on the same dates as the Interim Award. In that Order, the Panel set the procedure by which it would award Respondent attorneys' fees based only on the Interim Award's finding in favor of Respondent on the two counts: breach of contract and FDUTPA. The sole remaining issue from the Interim Award was set for determination before the Panel issued the Supplemental Award. Accordingly, the Court finds that the Interim Award is a final award and the doctrine of functus officio would bar the Supplemental and Third Award, unless they fit into an exception to the doctrine.

#### b. Exceptions to the Doctrine

 Courts have carved out several exceptions to the functus officio doctrine: to correct a mistake apparent on the face of the award; rule upon an award presented to the panel but not yet ruled upon; and clarify an ambiguity in a seemingly complete award. *See Office & Prof. Employees v. Brownsville Gen. Hosp.*, 186 F.3d 326, 331 (3d Cir.1999); *see also Legion Ins.*, 198 F.3d at 720 (allowing changes when the parties consent). None of these exceptions applies to the Supple-

mental Award. The Panel made two critical changes in the Supplemental Award: the Panel ruled in Respondent's favor in three different counts and the Panel removed the basis for the granting of punitive damages.

Respondent argues that the Supplemental Award does not supplant the award, but merely amends an "obvious minstrel error." According to Respondent, the Panel made a minstrel mistake or scrivener's error, in failing to list all of the counts that the Panel ruled in favor of Respondent. Respondent highlights the fact that the Panel did not rule on the remaining claims seriatim, but ruled against Respondent on "each of the remaining counts." [8] The Court cannot accept Respondent's strained logic. A scrivener's error is a minor mistake or inadvertence, see Garner, *Black's Law Dictionary* at 563, and changing an award in favor of another party is not a minor mistake. The fundamental changes in the Supplemental Award are not corrections of a mistake apparent on the face of an award nor clarifications of an ambiguity; the only exceptions that could possibly apply to the Supplemental Award.

The Third Award is, however, an exception to the doctrine, because the Third Award ruled upon an issue, attorneys' fees and costs, presented to the panel, but not yet ruled on.

#### 3. Conclusion

 The Court notes that it agrees with Judge Posner that an arbitrator has or should have the intrinsic power to re-

---

**8.** As evidence of this error, Respondent points to the Panel's findings, which were cited to support its award of punitive damage. According to Respondent, that evidence also supports a finding of negligence, fraud, and alter ego. The Panel does not mention those claims and instead cites to Florida Statutes § 768.737, which requires an arbitrator to provide her basis for the granting of punitive damages. Regardless of whether the evidence might support a finding of negligence, fraud, or alter ego, it is clear that the panel listed those finding to support its award of punitive damages.

consider her opinions within a reasonable amount of time. *See Glass,* 56 F.3d at 847. Although the roughly two and a half months period between awards is not an unreasonable amount of time, other aspects of the reconsideration convince the Court that the Supplemental Award exceeded the Panel's inherent power to reconsider. It appears that the Panel gave no notice that it intended to reconsider the Interim Award and did not provide the Parties with an opportunity to respond. Also, the Panel was not in possession of any of the evidence that had been used at the arbitration. Additionally, in the Supplemental Award, the Panel did not provide any sort of explanation of why it issued the Supplemental Award or whether the awards should be read in conjunction or independently.[9] Using Rule 60 as a guide, the Panel did not meet any of the basis for granting relief from judgment. Finally, the Supplemental Award seems to be in response the Petitioner's Motion to Vacate the Interim Award filed in this Court and not a true reconsideration of the merits of the case.

Accordingly, the Supplemental Award does not fit into a recognized exception, and the Supplemental Award is therefore barred by the doctrine of functus officio and the Rules of the AAA. Consequently, Petitioner's Motion to Vacate Second Arbitration Award (Doc. No. 33, filed November 21, 2003) is **GRANTED,** and the Court will disregard the Supplemental Award completely. The Third Award is not barred by the doctrine of functus officio and the AAA rules, because it dealt only with the award of attorneys' fees and costs, which was a matter not already determined.

**C. Analysis of the Interim and Third Awards**

The Court now turns to the remaining awards, the Interim Award and Third Award, to determine if it is proper to vacate or confirm. The Court will examine each part of the awards in turn.

**1. Interim Award**

The Interim Award has several aspects that the Court will look at individually: the award of punitive damages, the award of compensatory damages, the finding of liability of attorneys' fees, and the imposition of liability on Rollins.

**a. Punitive Damage Award**

 In the Interim Award, the Panel awarded Respondent, $2,250,00.00 in punitive damages under FDUTPA. Petitioner raises several bases for vacating the award of punitive damages, but because the Court finds that the award was in manifest disregard of the law, the Court does not address the other bases. Manifest disregard of the law requires more than just a legal error or misunderstanding, which is not grounds for vacating an arbitration award. *Montes v. Shearson Lehman Bros., Inc.,* 128 F.3d 1456, 1460–61 (11th Cir.1997). Vacating under this standard is narrow and to be rarely used. *Id.* The Court finds it appropriate in this case, because awarding punitive damages under FDUTPA is a legal error. *See Heindel v. Southside Chrysler–Plymouth, Inc.,* 476 So.2d 266, 271 (Fla.Dist.Ct.App. 1985) ("recovery of punitive damages is clearly beyond the scope of proceedings under chapter 501, part II."). More importantly though, Respondent's attorney in closing argument conceded that Respondent was not entitled to punitive damages

---

**9.** After the issuance of the Third Award, the Panel granted a motion for clarification and incorporated the Interim and Supplemental Award into the Third Award.

under FDUTPA: "We've moved for punitive damages. On the unfair and deceptive trade practices, no." Although not the paradigm of clarity, Respondent informed the panel that he was not entitled to punitive damages under FDUTPA. Despite being informed by both parties that punitive damages were not available under FDUTPA, the panel, in manifest disregard of the law, awarded them anyway. Accordingly, the Court **VACATES** the award of punitive damages found in the Interim Award.

b. Compensatory Award

The Panel awarded Respondent $750,000.00 in compensatory damages without specifying the basis for that award. The Court finds that the award of compensatory damages was not in manifest disregard for the law, and there is no statutory basis for vacating the award. Accordingly, the compensatory award of $750,000.00 is **CONFIRMED.**

c. Award of Attorneys' Fees

The Panels awarded attorneys' fees, and as attorneys' fees are permitted under FDUTPA. Thus, the award of attorneys' fees is **CONFIRMED.**

d. Imposition of Liability on Rollins

The Panel held that Orkin and Rollins, the parent company of Orkin. were liable for the awards. The Panel however found in favor of Petitioners on all theories that would subject Rollins to liability: Count VIII, Agency; Count IX, Joint Venture; Count X, Joint Enterprise; and Count IX, Alter Ego. Thus holding Rollins liable for those awards is arbitrary and capricious and the imposition of liability on Rollins is **VACATED.**

2. Third Award

The Third Award granted attorneys' fees in the amount of $975,000,000, costs in the amount of $189,902.00, and administra-

tive fees and expenses of the AAA in the amount of $88,783.29, and as there is a basis for that award, the Third Award is **CONFIRMED.**

IV. Conclusion

Respondent's Motion to Confirm Arbitration Award (Doc. No. 10, filed October 24, 2003) is **GRANTED** in part and **DENIED** in part. Petitioner's Amended Motion to Vacate Arbitration Award (Doc. No. 25, filed November 3, 2003) is **GRANTED** in part and **DENIED** in part. Petitioner's Motion to Vacate Second Arbitration Award (Doc. No. 33, filed November 21, 2003) is **GRANTED.** Petitioner's Motion to Vacate Third Award (Doc. No 47. filed February 19, 2004) is **DENIED.** Respondent's Amended Motion to Confirm Arbitration Award (Doc. No. 56, filed April 26, 2004) is **GRANTED** in part and **DENIED** in part. The Clerk shall enter judgment in favor of Respondent and against Petitioner Orkin in the amount of $2,003,685.29 and shall close the file.