# In the

# United States Court of Appeals

## For the Seventh Circuit

————————

No. 03-3253

MCKINNEY RESTORATION, CO., INC., MCKINNEY
CONSTRUCTION, MC CONSTRUCTION, et al.,

*Plaintiffs-Appellants*,

v.

ILLINOIS DISTRICT COUNCIL NO. 1 OF THE
INTERNATIONAL UNION OF BRICKLAYERS
AND ALLIED CRAFTWORKERS, AFL-CIO and
BRICKLAYERS UNION LOCAL NO. 21, Affiliated
with the Illinois Dist. Council No. 1 of the Int'l
Union of Bricklayers and Allied Craftsmen,

*Defendants-Appellees.*

————————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 01 C 1514—**Blanche M. Manning**, *Judge.*

————————

ARGUED JUNE 10, 2004—DECIDED DECEMBER 15, 2004

————————

Before CUDAHY, RIPPLE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* This appeal concerns two arbi-
tration awards entered as a result of a dispute between:
Illinois District Council No. 1 of the International Union of
Bricklayers and Allied Craftworkers, AFL-CIO, and its

affiliated Local 21 ("Union"); and McKinney Restoration Co., Inc., McKinney Construction, MC Construction, and Lee McKinney (collectively "Employer"). The Employer filed suit in the district court to vacate two labor arbitration awards entered in favor of the Union, and the Union counterclaimed seeking enforcement of those awards. Because the Employer's challenge to the first arbitration award was untimely, the district court granted the Union's motion for partial summary judgment enforcing the first award based on the statute of limitations. The court subsequently granted the parties' joint motion for direction of entry of final judgment pursuant to Rule 54(b), and the Employer appealed. The sole issue before this court on appeal is whether the Employer's action to vacate the first arbitration award was filed outside the statute of limitations.

The Employer argues that the first arbitration left open issues that were decided in the second award, and therefore that it was not a final appealable decision until after the second arbitration award. Accordingly, it argues that the statute of limitations for both awards commenced only after the second arbitration award was entered, and that the action is thus timely as to both awards. The history of the arbitration is therefore critical to this case.

McKinney Restoration is a construction contracting business that was formerly incorporated, and Lee McKinney was the president and sole shareholder. McKinney Construction and MC Construction are unincorporated businesses in the construction contracting industry and are owned and operated by Lee McKinney. In the first arbitration, the Union filed a grievance against the Employer, alleging violations of the collective bargaining agreement. According to that collective bargaining agreement, all disputes had to be submitted initially to the joint arbitration board ("JAB"). The JAB conducted a hearing on that grievance on December 1, 1999,and reconvened on March 8, 2000, to hear additional evidence. Notice of the hearing was provided to

Lee McKinney as well as to all three of the McKinney business entities, and Lee McKinney and an attorney appeared at the hearing on behalf of the those three business entities. Following those hearings, the JAB issued a written decision. It found that McKinney Restoration was the only signatory to the collective bargaining agreement, but that McKinney Restoration, McKinney Construction, and MC Construction were effectively the same business and therefore that all three were bound to the terms of the agreement. The JAB further determined that those businesses had performed more than 2,000 hours of bargaining unit work in violation of the agreement, and it ordered them to pay $77,576.24 in damages. A written copy of the decision was sent to Lee McKinney, and receipt of that decision was acknowledged on May 1, 2000. Accordingly, this decision is known as the May award.

The three business entities failed to comply with that May award, however, resulting in a second grievance by the Union against the Employer. In a letter dated October 13, 2000, the Union informed the Employer of the grievance and informed it that a hearing would be held before the JAB to consider "claims related to liability for and compliance with" the May decision. The JAB conducted that hearing on October 25, 2000, and held that McKinney was personally bound by the collective bargaining agreement and therefore was jointly liable for the obligations under the May award. Accordingly, the JAB ruled that a bond Lee McKinney had previously posted could be applied towards satisfaction of that obligation. Lee McKinney received a copy of that award in December 2000, which is thereby termed the "December award."

On March 2, 2001, the Employer filed an action in the district court seeking to vacate both the May and December awards pursuant to the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185. The Union countersued seeking enforcement of the awards. The district court bifurcated the

proceedings, addressing first whether the action to vacate the May award was barred by the statute of limitations. The court held that it was barred by the limitations period, and the Employer appealed.

## I.

It is well-settled law in this circuit that "the failure to challenge an arbitration award within the applicable limitations period renders the award final." *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir. 1987); *Sullivan v. Gilchrist*, 87 F.3d 867, 871 (7th Cir. 1996); *Sullivan v. Lemoncello*, 36 F.3d 676, 681 (7th Cir. 1994). All parties agree that the appropriate limitations period in this case is 90 days, and our cases are in accord. *Centor*, 831 F.2d at 1311 (applicable limitations period to vacate an arbitration award in Illinois is 90 days); *Gilchrist*, 87 F.3d at 870 (same); *Lemoncello*, 36 F.3d at 681 (same). That would seem to end the case because the suit to vacate the May award was filed well beyond that 90-day period. The Employer, however, seeks to avoid that consequence by contending that the May award was not in fact a final decision by the JAB because the issue of McKinney's personal liability was before the JAB at the initial hearing and was not decided until the December award. Accordingly, the Employer maintains that the May and December awards were actually one decision by the JAB and therefore the limitations period did not begin to run until the December award was issued. That argument is both factually and legally insupportable.

## A.

The argument is factually flawed because there is no evidence whatsoever that Lee McKinney's personal liability

was before the JAB for the hearings culminating in the May award. The Employer points to a compendium of innocuous facts to support its position. First, it notes that in a November 12, 1999, letter apprising the Employer of the December hearing for the first arbitration, the Union stated:

> Local 21 believes that the relationship among each of the named business entities and the relationship of Mr. McKinney to those entities is such that each of the named entities and Mr. McKinney personally are liable for the obligations imposed by the labor contract between District Council No. 1 and McKinney Restoration Co.

The Employer contends that this letter establishes that the issue of Lee McKinney's personal liability was before the JAB prior to the May award. In addition, the Employer points out that each letter regarding the hearings was addressed to Lee McKinney as well as the three business entities. That is the only evidence that Lee McKinney identifies indicating that his personal liability was before the JAB at the first arbitration.

In addition, Lee McKinney asserts that certain aspects of the October hearing for the second arbitration indicate that it was a continuation of the first arbitration. Specifically, he notes that the two JAB decisions were heard and authored by the same JAB panel and that the October 13, 2000, letter regarding the second arbitration provided: "Although the claim raised by the Union has to do with compliance, you will be given an opportunity if you wish to request that the Joint Arbitration Board consider any arguments or evidence you wish to present." Although the connection is far from self-evident, the Employer contends that this statement demonstrates that the evidence at the October hearing "was not limited to the personal liability of McKinney which had not been addressed or decided at the prior Hearing . . . [but

rather] that the purpose of the Hearing was to reopen the prior Hearing for whatever the parties wanted to discuss. . . ."

Those arguments by the Employer fall far short of establishing that the May and December awards were actually one comprehensive decision by the JAB. In fact, the record demonstrates that the opposite is true. Although the November 12 letter preceding the hearings for the first arbitration evidenced the Union's belief that Lee McKinney should be held personally liable, there is absolutely no evidence that his personal liability was presented to the JAB. The JAB determined the liability of the three business entities and never discussed Lee McKinley's liability, nor did it indicate that his personal liability had ever been raised. In fact, in the May award, the JAB identifies the parties notified of the hearing and the representatives present, in each case mentioning only the three business entities. For instance, the JAB records that the "contractor" was notified of the hearing, and then defines contractor as the three business entities. The JAB further identifies the "[r]epresentative present for McKinney Restoration Co., Inc., McKinney Construction, and MC Construction" as Lee McKinney and Gerard Smetana. At no time is Lee McKinney identified as a party, and no representative of his interests is identified. This is in contrast to the December award, which reflects that Lee McKinney as well as the three business entities were notified of the hearing, and identifies Lee McKinney and Gerard Smetana as "representative[s] present for McKinney Restoration Co., Inc., McKinney Construction, MC Construction, *and Mr. Lee McKinney*" (emphasis added). That establishes that the JAB in the first hearing addressed claims only against the three business entities, whereas claims against Lee McKinney were included in the second arbitration. Moreover, the JAB in its May award defined the matter before it as concerning the charges that the contractor violated the collective bar-

gaining agreement; as was stated, the term "contractor" in the decision was limited to the three business entities. There is, in short, absolutely no evidence that the personal liability of Lee McKinney was presented to the JAB, and therefore its decision reflected a final determination of all issues before it.

The use of the same JAB panel for the second arbitration is unexceptional, and the openness to other issues in no way indicates that it was meant as a continuation of the prior arbitration hearings. In fact, the October 13 letter notified the Employer that the hearing was held to address problems concerning compliance with the prior decision of the JAB. In contrast, when notifying the Employer of the second hearing to be conducted in the course of the first arbitration, the letter stated that the JAB was scheduled "to reconvene, to decide certain unresolved matters, from the December 1, 1999 Joint Arbitration Board hearing." No similar language concerning unresolved matters was present for the second arbitration.

### B.

In addition to its failure to comport with the facts, the Employer's argument is legally incorrect as well. The case law in this circuit establishes that the May award was a final decision that commenced the running of the limitations period.

The Employer rests its claim entirely on *Ameritech Services, Inc. v. Local Union No. 336, IBEW, AFL-CIO*, No. 96 C 5897, 1997 WL 222439 (N.D. Ill. April 30, 1997). In *Ameritech*, the district court noted that it had jurisdiction under § 301 of the LMRA to vacate or enforce a labor arbitration award, but held that ordinarily the arbitrator's award must be final and binding before such review is undertaken. *Id.* at 5. According to that court, the finality rule—called the "complete arbitration" rule—defined a

"final" arbitration award as one "intended by the arbitrator to be his complete determination of every issue submitted to him." *Id.*, citing *Anderson v. Norfolk and Western Ry. Co.*, 773 F.2d 880, 883 (7th Cir. 1985). Where a substantive task remained for the arbitrator to perform, the ruling was not final. *Id.*; *see also Millmen Local 550, United Brotherhood of Carpenters and Joiners of America, AFL-CIO v. Wells Exterior Trim,* 828 F.2d 1373 (9th Cir. 1987)*; Public Service Elec. and Gas Co. v. System Council U-2, IBEW, AFL-CIO,* 703 F.2d 68 (3d Cir. 1983)*.*

We reached a similar conclusion in *Smart v. IBEW*, 315 F.3d 721 (7th Cir. 2002), which was brought under both the LMRA and the Federal Arbitration Act (FAA), but in which we focused our discussion on the FAA provisions. *See International Union of Operating Engineers v. Murphy Co.*, 82 F.3d 185, 188-89 (7th Cir. 1996)(citing case for the proposition that the FAA and the LMRA establish the same governing principles and that courts routinely cite decisions under one statute as authority for decisions under the other). In *Smart*, we addressed issues of the finality and ripeness of arbitration awards, holding that "[o]ne thing is clear, . . . if the arbitrator himself thinks he's through with the case, then his award is final and appealable . . .." 315 F.3d at 725. That is true even if the award was incomplete in that the arbitrators did not complete their assignment but believed they had, or where the award was so poorly drafted that the party against whom the award is entered does not know how to comply with it. *Id.* In such a case, the award is properly before the court, and the court then may vacate it pursuant to § 10(a)(4) of the Federal Arbitration Act. *Id.*; 9 U.S.C. § 10(a)(4)(requiring a court to vacate an arbitration award where "the arbitrators . . . so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made").

In *Smart*, the arbitrator found liability, holding that Smart violated the collective bargaining agreement by fail-

ing to make required contributions to the union's welfare fund. The arbitrator did not, however, determine the amount owed the union, directing the parties to calculate the amount owed. *Id.* at 724. Because the arbitrator believed that the arbitration was completed, the award was final and appealable. The *Smart* court noted that unlike litigation, arbitration allows parties flexibility in dispute resolution, thus allowing them to proceed to arbitration solely on liability and leaving damages to their mutual agreement. *Id.* at 726. Accordingly, the award was enforceable even though it determined only liability, not damages, because it was clear that the arbitrators "had finished their assignment and clear as well what their award required." *Id.*

That contrasts with the facts present before the *Ameritech* court, in which the arbitrator had apparently not completed the assignment. In *Ameritech*, the parties agreed at the onset of the arbitration hearing that if a violation of the collective bargaining agreement was found, the arbitrator should not determine the remedy but should return the matter to the parties for them to resolve it, although the arbitrator was to retain jurisdiction. 1997 WL 222439 at 2. Accordingly, when the arbitrator subsequently determined that a violation existed, he retained jurisdiction for "ninety days, or longer if the parties so require, while the parties attempt to fashion the appropriate remedy." *Id.* at 3. The parties did not attempt to fashion an appropriate remedy, and instead filed a suit seeking to vacate the agreement and a counterclaim seeking enforcement. *Id.* The court held that the arbitration decision had all the characteristics of an interim order, in that neither the parties nor the arbitrator intended the award to be final, and the substantive task of determining a remedy remained to be performed, with the arbitrator retaining jurisdiction presumably for that purpose. *Id.* at 7.

Accordingly, where an arbitrator believes the assignment is completed, the award is final and appealable, and the

court may then vacate the award for that reason. Where the evidence establishes that the arbitrator does not believe the assignment is completed, the award is not final and appealable.

The present case contains none of those markers of a nonfinal order. In this case, nothing in the May award indicates that the JAB believed that any issues remained to be decided. The award determined liability and imposed a remedy. The JAB did not retain jurisdiction, and in fact stated that if the Union obtained evidence of additional work performed in violation of the agreement, they could file a new grievance and the JAB would consider awarding additional damages. The award further declared that if the contractor failed to abide by its terms and legal action was necessary to enforce the award, then the contractor would be responsible for costs, legal fees, and interest. That is the language of a final award disposing of all issues before the arbitrators, not an interim one. Accordingly, the district court properly held that the May award was final, thus commencing the statute of limitations, and that the action to vacate that award was untimely.

## II.

The Employer raised a second argument in its brief, asserting that if the May award is deemed to be final and appealable, then the counterclaim by the Union to enforce that award was commenced beyond the six-month statute of limitations for enforcement actions. The Union argues that the Employer is simply wrong in stating that the limitations period for enforcement actions is six months, but points out that the argument is waived as well because it was not raised in the district court. The Employer concedes that it failed to present this issue to the district court, but asserts that it is jurisdictional and therefore can be raised at any time. We have repeatedly held that statutes of lim-

itations, as opposed to true limitations on judicial power, are not jurisdictional. *Central States, Southeast and Southwest Areas Pension Fund v. Safeway, Inc.*, 229 F.3d 605, 610 (7th Cir. 2000). The Employer makes no argument that this is a limitation on judicial power such as 28 U.S.C. § 2101 or Federal Rule of Appellate Procedure 4 (specifying the times in which an appeal must be filed with the Supreme Court and in the court of appeals respectively.) *Id.* Instead, the Employer identifies this as a traditional limitations period, in this case arguing that it is a limitations period borrowed from state statutes of limitations. The limitations period is not jurisdictional, and the issue is waived.

The decision of the district court is AFFIRMED.


A true Copy:

      Teste:


                       _____
                       *Clerk of the United States Court of*
                       *Appeals for the Seventh Circuit*

USCA-02-C-0072—12-15-04