**AMERICAN NUMISMATIC ASSOCIATION, Petitioner–Appellee,**

v.

**Christopher CIPOLETTI, Respondent–Appellant.**

No. 09CA2591.

Colorado Court of Appeals, Div. III.

March 3, 2011.

Sears & Swanson, P.C., Hollie L. Wieland, Colorado Springs, Colorado, for Petitioner–Appellee.

Mulliken Weiner Karsh Berg & Jolivet, P.C., Gregory M. O'Boyle, Colorado Springs, Colorado, for Respondent–Appellant.

Opinion by Judge J. JONES.

The primary issue in this appeal is whether an arbitrator's order dismissing an action on the merits is an "award" within the meaning of the Uniform Arbitration Act of 1975, ch. 154, sec. 1, §§ 13–22–201 to –223, 1975 Colo. Sess. Laws 573–78 (the 1975 Act), notwithstanding that there remains an unresolved question of a party's entitlement to attorney fees and costs under a contractual provision. We conclude that it is. Consequently, we affirm the district court's order denying, as untimely, respondent Christopher Cipoletti's application to vacate the arbitrator's dismissal of his case against petitioner, American Numismatic Association (ANA), because he did not file it within thirty days of the dismissal order, as required by the 1975 Act. We further conclude that the arbitrator did not lose jurisdiction to resolve the attorney fees and costs issues when it issued the award, and therefore affirm that portion of the district court's order confirming the arbitrator's costs award.

## I. Background

From June 2002 through October 2007, Mr. Cipoletti was employed as ANA's executive director and general counsel. After ANA terminated Mr. Cipoletti, he filed a demand for arbitration as required by his June 2002 employment agreement, claiming that ANA had breached the employment agreement. ANA denied any breach.

The dispute at arbitration was whether ANA had cause to terminate Mr. Cipoletti. After Mr. Cipoletti presented his case to the arbitrator, ANA moved to dismiss based on after-acquired evidence that Mr. Cipoletti had committed wrongdoing while employed by ANA. In that motion, ANA also requested attorney fees and arbitration costs pursuant to a purported fee- and cost-shifting provision in the employment agreement.

The arbitrator suspended the hearing on Mr. Cipoletti's termination claim so that she could rule on the motion to dismiss before proceeding, if necessary, to hear ANA's defense to the claim. Mr. Cipoletti asserted that the after-acquired evidence was only relevant to the issue of damages, but could not be used to bar his termination claim.

On May 27, 2009, the arbitrator issued a detailed written "Order RE: Respondent's Motion to Dismiss," granting ANA's motion to dismiss Mr. Cipoletti's "entire case." The order directed the parties to submit briefs on the appropriateness of ANA's requests for attorney fees and costs under the employment agreement. Both parties submitted briefs.

On July 29, 2009, the arbitrator issued what she captioned as a "Final Award." Therein, the arbitrator noted that she had "dismissed [Mr. Cipoletti's] case in its entirety" in the May 27, 2009, order. The arbitrator found that Mr. Cipoletti had prosecuted the arbitration "in bad faith," and therefore granted ANA arbitration costs pursuant to the terms of the employment agreement. She declined, however, to award attorney fees to ANA because the employment agreement did not expressly provide for that remedy. She also "confirmed" that, contrary to Mr. Cipoletti's "renewed argument," he was not entitled to receive payment from his deferred compensation plan. The final award also stated: "This Award is in full settlement of all the claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied."

ANA filed a motion in the district court to confirm the May 27, 2009, order granting ANA's motion to dismiss, and to confirm the July 29, 2009, costs order. *See* ch. 154, sec. 1, § 13–22–213, 1975 Colo. Sess. Laws 576 ("Upon application of a party, the court shall confirm an award...."). On August 28, 2009, Mr. Cipoletti filed a response and application to vacate both orders. He argued that the arbitrator exceeded her power by going beyond the terms of the employment agreement and the termination letter to dismiss the case. *See* ch. 154, sec. 1, § 13–22–214(1)(a)(III), 1975 Colo. Sess. Laws 576 (the

court shall vacate an award where "[t]he arbitrators exceeded their powers"). ANA contested Mr. Cipoletti's application on the grounds he had not filed it within thirty days of his receipt of a copy of the May 27, 2009, dismissal order, as required by former section 13–22–214(2), ch. 104, sec. 2, 1993 Colo. Sess. Laws 360.

The district court confirmed the May 27, 2009, dismissal order, agreeing with ANA's argument that Mr. Cipoletti's application to vacate this order was untimely because the statutory thirty-day limitations period had run. The court then confirmed the July 29, 2009, costs order, also agreeing with ANA that Mr. Cipoletti had not established any basis for vacating it.

On appeal, Mr. Cipoletti contends that the district court erred in denying his application to vacate the May 27, 2009, dismissal order as untimely because that order was not an "award" subject to confirmation or challenge until the arbitrator ruled on ANA's pending request for attorney fees and costs. In the alternative, he contends that if the dismissal order was an award subject to confirmation or challenge, the arbitrator lacked jurisdiction to rule on ANA's request for attorney fees and costs, and therefore the district court erred in confirming the July 29, 2009, costs order. We reject both contentions.

## II. The May 27, 2009, Dismissal Order Was An "Award"

The 1975 Act governs this case. § 13–22–230, C.R.S.2010 ("an arbitration agreement made before August 4, 2004, is governed by the [1975 Act]").[1]

Former section 13–22–214 of the 1975 Act provided: "An application [to vacate an award] shall be made within thirty days after delivery of a copy of the award to the applicant...." Ch. 104, sec. 2, § 13–22–214(2), 1993 Colo. Sess. Laws 360.[2] The parties disagree about what constitutes an "award" within the meaning of former section 13–22–

214, and therefore whether the motion to vacate was filed within thirty days after the delivery of a copy of the "award."

ANA contends that under the 1975 Act the arbitrator's May 27, 2009, dismissal order and the July 29, 2009, costs order constituted separate "awards," from which the thirty-day period of former section 13–22–214(2) began to run. Mr. Cipoletti contends that only the July 29, 2009, costs order constituted an "award" for purposes of the time limitation for seeking to vacate an award because the dismissal order did not become final until the arbitrator ruled on ANA's request for attorney fees and costs. We agree with ANA.

### A. Standard of Review

The meaning of "award" as used in the 1975 Act is an issue of statutory interpretation. We review such issues de novo. *Foiles v. Whittman*, 233 P.3d 697, 699 (Colo.2010); *Carruthers v. Carrier Access Corp.*, 251 P.3d 1199, 1203 (Colo.App.2010). "When interpreting a statute, we strive to give effect to the legislative purposes by adopting an interpretation that best effectuates those purposes." *Smith v. Executive Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo.2010). We look first to the plain language of the statute, giving the words and phrases therein their commonly accepted and understood meanings. *Id.; Carruthers*, 251 P.3d at 1203. "[W]e also consider the statute as a whole so that we may give consistent, harmonious, and sensible effect to all of its parts." *Carruthers*, 251 P.3d at 1203; *accord Bd. of County Comm'rs v. Costilla County Conservancy Dist.*, 88 P.3d 1188, 1192 (Colo.2004). If we determine that the statutory language is clear and unambiguous, we will enforce it as written; we will not resort to other rules of statutory construction. *Smith*, 230 P.3d at 1189; *Carruthers*, 251 P.3d at 1203. If, however, we determine that the relevant statutory language is ambiguous, we may look to extrinsic evidence of legislative intent. *Costilla County Conservancy Dist.*, 88 P.3d at

---

**1.** The 1975 Act was repealed and reenacted, with some amendments, in 2004. Ch. 363, sec. 1, §§ 13–22–201 to –230, 2004 Colo. Sess. Laws 1718–31. We express no opinion as to the meaning of "award" under the 2004 version of the Act.

**2.** The 1975 Act did not provide any express time limit for a party to seek confirmation of an "award." *See* ch. 154, sec. 1, § 13–22–213, 1975 Colo. Sess. Laws 576.

1193; *Carruthers,* 251 P.3d at 1203; *see* § 2–4–203, C.R.S.2010.

### B. Meaning of "Award"

■ As noted, former section 13–22–214(2) required a party to apply to the court to vacate an arbitration "award" within thirty days after delivery of a copy. Though former section 13–22–210 dictated the form of an award (it was required to be in writing and signed by the arbitrator), neither that section nor any other provision in the 1975 Act defined the term "award." *See* ch. 154, sec. 1, §§ 13–22–210, 13–22–213, 1975 Colo. Sess. Laws 575.[3] No decision by this court or the Colorado Supreme Court has addressed the meaning of the term, either in the context of the 1975 Act or of the amended Act.

■ When a statute does not define a term, but the term used is one of common usage, we may refer to dictionary definitions to determine its plain and ordinary meaning. *Cerbo v. Protect Colorado Jobs, Inc.,* 240 P.3d 495, 501 n. 4 (Colo.App.2010); *People v. Connors,* 230 P.3d 1265, 1267 (Colo.App. 2010); *see Tidwell v. City & County of Denver,* 83 P.3d 75, 82 (Colo.2003). *Black's Law Dictionary* 157 (9th ed.2009) defines "award" as: "A final judgment or decision, esp. one by an arbitrator or by a jury assessing damages." Similarly, *Webster's Third New International Dictionary* 152 (2002) defines "award" as: "a judgment, sentence, or final decision; *esp:* the decision of arbitrators in a case submitted to them . . . ."

Unfortunately, these definitions do not provide a clear answer to the precise issue before us. Although they equate an "award" with a "final judgment" or "final decision," they beg the question of what "final" means in this context. They provide some implicit indication that a final judgment or decision is one which resolves the merits of a dispute, but are not sufficiently clear to enable us to conclude with certainty, based solely on consideration of the ordinary meaning of "award," that a decision resolving the merits of the claims before the arbitrator, but leaving a request for attorney fees and costs

unresolved, is an "award." We therefore conclude that the term, as used in the 1975 Act, is ambiguous.

Though the 1975 Act was adopted by many states, we have not been able to find any case construing the term "award" in the present context. We are not left completely in the dark, however, because the United States Supreme Court and the Colorado Supreme Court have construed similar terms in analogous contexts. *See* § 2–4–203(1)(d) (if a statute is ambiguous, a court may consider laws on the same or similar subjects); *Burnworth v. Adams County,* 826 P.2d 368, 369–70 (Colo.App.1991) (same), *superseded by statute on other grounds as recognized in City of Colorado Springs v. Powell,* 156 P.3d 461, 468 (Colo.2007).

For purposes of the statute providing that "final decisions" of federal district courts are appealable to the federal courts of appeals, 28 U.S.C. § 1291, the Supreme Court has held that "[a] 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). The Colorado Supreme Court has adopted the same definition for the term "final judgment" for purposes of provisions governing appeals from state district court. *Mission Viejo Co. v. Willows Water Dist.,* 818 P.2d 254, 258 (Colo.1991); *Kempter v. Hurd,* 713 P.2d 1274, 1277 (Colo.1986); *see also* C.R.C.P. 54(a).

In *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), the Court held, applying this definition, that "[a] question remaining to be decided after an order ending litigation on the merits does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order." *Id.* at 199, 108 S.Ct. 1717. The Court went on to hold that because a request for attorney fees under a fee-shifting statute raises issues "collateral to" and "separate from" the decision on the merits, such a request does not prevent a judgment on the merits from being final. *Id.* at 200–02, 108 S.Ct. 1717. As pertinent here, the Court said: "[A] claim for attorney's fees

---

**3.** The current version of the Act also does not define "award."

is not part of the merits of the action to which the fees pertain. Such an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action." *Id.* at 200, 108 S.Ct. 1717.

In *Baldwin v. Bright Mortgage Co.*, 757 P.2d 1072 (Colo.1988), the court adopted the rule announced in *Budinich* and applied it to C.R.C.P. 54(b) and section 13–4–102, C.R.S. 2010, both of which limit appellate court jurisdiction, with certain exceptions, to "final judgments." The court held that an unresolved issue of attorney fees does not preclude a judgment on the merits from being final for purposes of appeal. *See also Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936, 941–42 (Colo.1993) (where attorney fees are sought as costs pursuant to a contractual fee-shifting provision, "[the] appeal on the merits can proceed independent of the fees issue"). The purpose of this rule is "to expedite the final resolution of cases on the merits." *Disner v. United Bank of Cherry Creek, N.A.*, 780 P.2d 51, 53 (Colo.App.1989).

Divisions of this court have applied the *Baldwin* rule in other contexts analogous to those here. For example, in *Madison Capital Co., LLC v. Star Acquisition VIII*, 214 P.3d 557, 560 (Colo.App.2009), the division held that a pending issue of the reasonable amount of attorney fees and costs to be awarded did not affect the finality of a contempt order. More pertinently, in *Allen Homesite Group v. Colorado Water Quality Control Commission*, 19 P.3d 32, 34–35 (Colo.App.2000), the division, construing section 24–4–106, C.R.S.2010, held that an administrative agency ruling is a "[f]inal agency action" for purposes of the time limit for seeking judicial review if it disposes of the merits, notwithstanding that there may be an unresolved issue as to a claimed entitlement to attorney fees.

Cases construing the Federal Arbitration Act, which, like the 1975 Act, uses the term "award" to describe an arbitrator's decision, are also instructive. We have found only two cases addressing whether an "award" is subject to provisions for confirming or vacating an award if a request for attorney fees and costs remains pending. Both hold that it is. *In re Rollins, Inc.*, 552 F.Supp.2d 1318, 1324–25 (M.D.Fla.2004), *aff'd in part, rev'd in part on other grounds*, 167 Fed.Appx. 798 (11th Cir.2006) (unpublished decision); *Crawford Group, Inc. v. Holekamp*, No. 4:06–CV–1274 CAS, 2007 WL 844819, *3–4 (E.D.Mo. Mar. 19, 2007) (unpublished order). Indeed, some federal courts consider interim awards deciding fewer than all claims to be final for purposes of seeking review. *See, e.g., Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231, 234–35 (1st Cir.2001) (partial award that determined liability but not damages); *Island Creek Coal Sales Co. v. City of Gainesville*, 729 F.2d 1046, 1049 (6th Cir.1984) ("interim order" disposing of a discrete issue was subject to judicial confirmation), *abrogated on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000); *but see McKinney Restoration Co., Inc. v. Illinois Dist. Council No. 1*, 392 F.3d 867, 871–72 (7th Cir.2004) (an award is not final until the arbitrators "complete their assignment").[4]

■ We are persuaded by the foregoing that an "award" is subject to confirmation or challenge under the 1975 Act if it entirely disposes of the case on the merits: an outstanding issue of attorney fees and costs under a fee- and cost-shifting provision does not affect the character of the decision on the merits as an "award."[5]

This construction of the term "award" is consistent with the overall purposes of the 1975 Act. The General Assembly enacted the

---

**4.** For this reason, we are not persuaded by the dissent's reliance on federal cases. Whatever the test applied by the federal courts, they are generally more, not less, solicitous of judicial challenges to arbitrators' decisions resolving fewer than all issues than we think appropriate under the Act.

**5.** *Swan v. Am. Family Mut. Ins. Co.*, 8 P.3d 546, 548 (Colo.App.2000), on which Mr. Cipoletti re-

lies, is easily distinguishable. In that case, the division held merely that a timely motion for modification of an award under former section 13–22–211, ch. 154, sec. 1, § 13–22–211, 1975 Colo. Sess. Laws 575, tolls the time for seeking judicial review of the decision. Mr. Cipoletti does not contend that he filed any motion cognizable under that statute.

1975 Act to "validate voluntary written arbitration agreements, make the arbitration process effective, provide necessary safeguards, and provide an efficient procedure when judicial assistance is necessary." Ch. 154, sec. 1, § 13–22–202, 1975 Colo. Sess. Laws 573. This provision "states the legislative intent to make the arbitration process efficient while promoting judicial economy." *Swan*, 8 P.3d at 548; *see also Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Mach. Workers of Am.*, 900 F.2d 608, 611 (3d Cir.1990) (the arbitration process is intended to be an expeditious alternative to traditional litigation).

Requiring a party desiring to vacate an arbitration award on the merits to seek judicial review of the merits decision within the time limit of former section 13–22–214(2) facilitates an expeditious resolution of the merits of the dispute, as does allowing a party to seek confirmation of an award on the merits at the earliest possible time. Allowing, or requiring, a party to wait until the arbitrator resolves an issue of attorney fees or costs delays the ultimate resolution of the merits and enforcement of the arbitrator's decision. *See Judd Constr. Co. v. Evans Joint Venture*, 642 P.2d 922, 924 (Colo.1982) ("The procedure of the [1975 Act] is designed to achieve enforcement without delay, or undue expense.").

This construction of "award" also promotes certainty in the arbitration process. Construing "award" in the same manner that "final judgment" has been construed in the context of appeals from state court allows parties to arbitration to make decisions based on a clear rule of long standing and consistent application. *See id.* at 925 ("An arbitration award is tantamount to a judgment. . . ."). Applying a different rule would promote confusion.

We acknowledge that, as the dissent observes, there are differences between arbitration and traditional litigation in court. But we are not persuaded that any of these differences dictates that we apply the concept of finality differently in this context. In particular, we perceive nothing about the fact that judicial review of the merits of an arbitrator's decision is quite limited as bearing

on the question before us. In this regard, we note that the division in *Allen Homesite Group*, 19 P.3d 32, applied the rule we adopt today in the context of judicial review of administrative agency action, an area where judicial review of the merits is also quite limited. *See* § 24–4–106(7), (11)(e), C.R.S. 2010; *McClellan v. Meyer*, 900 P.2d 24, 29 (Colo.1995).

We also acknowledge that our resolution of this issue raises a concern about piecemeal judicial review. *See BFN–Greeley, LLC v. Adair Group, Inc.*, 141 P.3d 937, 940 (Colo. App.2006) (the 1975 Act narrowly limits judicial vacatur of an award to "facilitate confidence in the finality of arbitration awards and discourage piecemeal litigation"); *Farmers Ins. Exch. v. Taylor*, 45 P.3d 759, 761 (Colo.App.2001) (same). Nonetheless, we are persuaded that the benefits of the rule we adopt best serve the purposes of the 1975 Act. And we observe that the same concern for piecemeal judicial review exists in the other contexts in which this rule is applied.

We conclude that the arbitrator's May 27, 2009, "Order RE: Respondent's Motion to Dismiss" was an "award" that triggered the time limit for judicial review under former section 13–22–214. It completely disposed of all claims on the merits. Because Mr. Cipoletti did not file his application with the district court within thirty days of its delivery, the district court properly dismissed it. *Kutch v. State Farm Mut. Auto. Ins. Co.*, 960 P.2d 93, 98–99 (Colo.1998).

### III. The Arbitrator Had Jurisdiction to Decide ANA's Request for Attorney Fees and Costs

■ Relying on *Applehans v. Farmers Insurance Exchange*, 68 P.3d 594 (Colo.App. 2003), Mr. Cipoletti contends in the alternative that if the May 27, 2009, dismissal order was an award, the arbitrator lacked jurisdiction to thereafter award costs to ANA. His reliance on *Applehans* is misplaced.

In *Applehans*, the division held that after the arbitrator had entered an award he could not thereafter modify the substance of the award for a reason other than those recognized by the 1975 Act. *Id.* at 596–98. But

here, the arbitrator did not modify the award on the merits by awarding costs to ANA. As noted, an award of attorney fees or costs is collateral to the merits of a dispute. Consequently, the arbitrator retained jurisdiction to enter the award of costs after she had entered the award on the merits. *See Brown v. Silvern*, 141 P.3d 871, 873–74 (Colo.App. 2005); *Kennedy v. Gillam Dev. Corp.*, 80 P.3d 927, 929 (Colo.App.2003) ("an award of attorney fees is distinct and separately appealable from the judgment on the merits"); *A. Tenenbaum & Co., Inc. v. Colantuno*, 3 P.3d 456, 457 (Colo.App.1999) ("A trial court has continuing jurisdiction to determine attorney fee issues after a notice of appeal is filed to review the merits judgment."), *aff'd*, 23 P.3d 708 (Colo.2001); *Koontz v. Rosener*, 787 P.2d 192, 199 (Colo.App.1989) (same as *A. Tenenbaum & Co.*).

The order is affirmed.[6]

Judge DAILEY concurs.

Judge LICHTENSTEIN dissents.

Judge LICHTENSTEIN dissenting.

I respectfully disagree with the majority's conclusion that the arbitrator's May 26, 2009, "Order RE: Respondent's Motion to Dismiss" was an "award" that triggered the time limit for judicial review under former section 13–22–214(2).

Simply put, we are asked to determine whether Cipoletti was required to seek judicial intervention in the arbitration within thirty days after the arbitrator issued an order granting ANA's mid-hearing motion to dismiss Cipoletti's case, rather than wait until the arbitrator concluded the arbitration proceedings with the issuance of the "Final Award." In my view, Cipoletti was not required to seek judicial intervention until the arbitrator completed her assignment in the arbitration proceeding, which in this case was evidenced by the issuance of the July 29, 2009 "Final Award." *See McKinney Restoration Co., Inc. v. Illinois Dist. Council No. 1*, 392 F.3d 867, 871–72 (7th Cir.2004) (an

award is not final unless the award indicates the arbitrator believes the assignment is completed).

## I. Discussion

### A. Meaning of "Award"

While I agree with the majority that "award," as used in former section 13–22–214(2) of the 1975 Act, is ambiguous, I believe that reading the term in light of the entire statute and the legislative purpose compels the conclusion that "award" means the arbitral decision which is intended by the arbitrator to be the complete determination of every issue submitted to arbitration and evidences the arbitrator's belief that the assignment is completed.

As an initial matter, this construction is in harmony with another provision of the 1975 Act that references an arbitrator's "award." *Board of County Comm'rs v. Costilla County Conservancy Dist.*, 88 P.3d 1188, 1192 (Colo. 2004) (we strive to construe a "statute as a whole to give 'consistent harmonious and sensible effect to all its parts'" (quoting *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002))). The provision states:

> Unless otherwise provided in the agreement to arbitrate, the arbitrator's expenses and fees, together with other expenses, not including counsel fees, incurred in the conduct of the arbitration shall be paid as provided in *the award*.

*See* Ch. 154, sec. 1, § 13–22–212, 1975 Colo. Sess. Laws 575 (emphasis added).

This section contemplates that the "award" includes a determination of arbitration expenses and, in instances where provided in the arbitration agreement, attorney fees. *See Compton v. Lemon Ranches, Ltd.*, 972 P.2d 1078, 1080 (Colo.App.1999) (recognizing that former section 13–22–212 allowed an arbitrator to award attorney fees as part of the "award" if the parties agree to it). The language used in this section also contemplates that the award will be issued following "the conduct of the arbitration."

---

6. Mr. Cipoletti's opening brief does not include, on a separate page immediately behind the caption page, a certificate that the brief complies with all requirements of C.A.R. 28 and 32, as required by C.A.R. 32(f). We remind counsel of their obligation to comply with all appellate rules governing the form and content of briefs.

Next and importantly, the above construction of "award" comports with the legislative purpose of the 1975 Act "[t]o facilitate confidence in the finality of arbitration awards and discourage piecemeal litigation." *BFN–Greeley, LLC v. Adair Group, Inc.,* 141 P.3d 937, 940 (Colo.App.2006); *accord Farmers Ins. Exch. v. Taylor,* 45 P.3d 759, 761 (Colo.App.2001). To achieve this goal "the [1975 Act] strictly limits the role of the courts in reviewing awards." *BFN–Greeley,* 141 P.3d at 940.

Judicial review is strictly limited because the idea behind arbitration is to allow " 'the parties to agree upon an alternate nonjudicial forum to resolve disputes which is simpler and more expedient than normally encountered in our judicial system.' " *Coors Brewing Co. v. Cabo,* 114 P.3d 60, 65 (Colo.App. 2004) (quoting *City & County of Denver v. Dist. Court,* 939 P.2d 1353, 1362 (Colo.1997)). "Judicial review reintroduces the costs and delays the parties sought to avoid by choosing an arbitral forum." *Treadwell v. Village Homes of Colo., Inc.,* 222 P.3d 398, 401 (Colo. App.2009); *see Swan v. Am. Family Mut. Ins. Co.,* 8 P.3d 546, 548 (Colo.App.2000) ("[T]he legislative intent [of the 1975 Act is] to make the arbitration process efficient while promoting judicial economy.").

To facilitate confidence in the finality of arbitration awards, the arbitrator is the final judge of both fact and law. *BFN–Greeley,* 141 P.3d at 940; *Coors Brewing Co.,* 114 P.3d at 64. Accordingly, the 1975 Act did not permit a court to review whether the arbitrator's legal rulings were correct on the merits. *See BFN–Greeley,* 141 P.3d at 940; *Coors Brewing Co.,* 114 P.3d at 64; *see also Judd Constr. Co. v. Evans Joint Venture,* 642 P.2d 922, 924 (Colo.1982) (this strict limitation on the court is "in conformity with the purpose of the [1975] Act and the significance of an arbitration award").

Pertinent here, the 1975 Act limited judicial vacatur of an arbitration award to statutorily enumerated grounds, including lack of an agreement to arbitrate; the award was procured by fraud, corruption, or other undue means; there was evident partiality by the arbitrators or misconduct prejudicing a party; or the arbitrators exceeded their powers. *See* Ch. 154, sec. 1, § 13–22–214(1)(a)(I)–(V), 1975 Colo. Sess. Laws 576 (listing the limited grounds for vacatur).

With regard to discouraging piecemeal litigation, Colorado courts have not directly addressed whether a court may vacate an award before the arbitrator's assignment is complete. However, federal courts interpreting the analogous Federal Arbitration Act (FAA) have recognized that a proceeding to confirm or vacate an award "necessarily occurs after the arbitrator has rendered his service." *Aviall, Inc. v. Ryder Sys., Inc.,* 110 F.3d 892, 895 (2d Cir.1997) (quoting *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 174 (2d Cir.1984)); *see, e.g., Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411, 414 n. 4 (2d Cir.1980) ("[I]t is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award."); *see also Wellpoint Health Networks, Inc. v. John Hancock Life Ins. Co.,* 547 F.Supp.2d 899, 910 (N.D.Ill.2008) (judicial review of an arbitration award is not appropriate until it is clear that the arbitrators have completed their assignment), *aff'd,* 576 F.3d 643 (7th Cir.2009); *Barrick Enterprises, Inc. v. Crescent Petroleum, Inc.,* 2010 WL 2990098 (E.D.Mich. No. 07–15081, July 28, 2010) (unpublished memorandum and order) (same).

In determining when the arbitration is complete for purposes of judicial review, in *Smart v. International Brotherhood of Electrical Workers, Local 702,* 315 F.3d 721, 725 (7th Cir.2002), the Seventh Circuit considered both the limited role of the courts and the absence of a ripeness provision in the arbitration statute to conclude that "if the arbitrator himself thinks he's through with the case, then his award is final and appealable." The Second Circuit likewise has determined that to be "final," an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them. *Michaels,* 624 F.2d at 413. Other federal courts have followed this principle, referred to as the "complete arbitration" rule, and have recognized the converse proposition that "[w]here the evidence establishes that the arbitrator does not be-

lieve the assignment is completed, the award is not final and appealable." *McKinney*, 392 F.3d at 872; *see Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio, & Mach. Workers of Am., Local 610*, 900 F.2d 608, 611 (3d Cir.1990) (failure to employ the "complete arbitration" rule would lead to precisely the type of piecemeal or "fragmented litigation" that courts should be diligent to avoid).[7]

I find the reasoning of the cases adopting the "complete arbitration" rule consistent with the purposes of the 1975 Act. *See Judd Constr.*, 642 P.2d at 924; *Treadwell*, 222 P.3d at 401.

In my view, the majority's construction of "award" does not account for the 1975 Act's strict limitation of the court's role in the arbitration process. Instead, the majority's view expands the court's role as it allows litigants to seek repeated judicial intervention during an arbitration proceeding. Such an expansion of the judicial role would frustrate the legislative intent of the 1975 Act because it would (1) disrupt what is designed to be an efficient review of the arbitration process and (2) lead to unwanted piecemeal litigation in the district and appellate courts. *See BFN–Greeley*, 141 P.3d at 940; *see also* Ch. 154, sec. 1, § 13–22–202, 1975 Colo. Sess. Laws 573.

And I am concerned that the majority's analysis, by focusing on whether the arbitration order disposes of all the "merits" or merely disposes of "collateral" issues, runs the risk of creating situations where losing parties may forfeit judicial review if they incorrectly identify what qualifies as a merits or collateral decision. *See Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231, 236 (1st Cir.2001) (cautioning that such a risk may be created by permitting judicial review of partial awards). The risk is further com-

pounded by the fact that a losing party has only thirty days to appeal after delivery of the award. Ch. 104, sec. 2, § 13–22–214(2), 1993 Colo. Sess. Law 360. In contrast, the construction of the term "award" under the "complete arbitration" rule eliminates any confusion over when the limitations period begins.

I am reluctant to adopt the majority's analogy to the traditional litigation framework, in which a party must appeal a final judgment on the merits independently of the costs and fees determination. C.A.R. 4; *see Baldwin v. Bright Mortg. Co.*, 757 P.2d 1072, 1074 (Colo.1988); *see also Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936, 941 (Colo.1993). In my view, reliance on the *Baldwin* rule is misplaced because the arbitration framework is inherently different from traditional litigation. *See Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 936 (10th Cir.2001) ("arbitration is far different from adjudication" (quoting *UHC Mgmt. Co. v. Computer Sciences Corp.*, 148 F.3d 992, 998 (8th Cir.1998))); *see Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir. 1999) ("somewhat different standards govern the finality of judgments and arbitral awards"); *Furr's Supermarkets, Inc. v. United Food & Commercial Workers Union*, Nos. 97–2002, 97–2020, 1997 WL 699063, at *5 (10th Cir. Nov. 10, 1997) (unpublished table decision) ("arbitration is not simply litigation in another forum, but an entirely different species of dispute resolution"); 1 *Domke on Commercial Arbitration* § 1:1 (3d ed.2009).

In *Compania Panemena Maritima v. J.E. Hurley Lumber Co.*, the Second Circuit recognized that an arbitration proceeding differs radically from litigation in court, noting, "Arbitration is subject to its own rules and practices at variance with court procedures. It is supposed to be a complete proceeding, with-

---

7. Some federal cases have stated an exception to the general rule and recognize that in limited circumstances parties may seek to have a partial resolution confirmed or vacated. The exceptions arise where concerns about delay or piecemeal litigation are defeated by other significant interests. *See, e.g., Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231, 235 (1st Cir.2001) (parties expressly agree in the arbitration contract to bifurcate the issue of liability from damages); *accord Trade & Transport, Inc. v. Natural Petro-*

*leum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991); *Publicis Commc'n v. True North Commc'ns, Inc.*, 206 F.3d 725, 729 (7th Cir.2000) (discrete, time-sensitive issue); *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022 (9th Cir.1991) (temporary equitable relief in arbitration); *Home Ins. Co. v. RHA/Pa. Nursing Homes, Inc.*, 127 F.Supp.2d 482, 488–89 (S.D.N.Y.2001) (separate and independent claim awarding possession of funds during pendency of arbitration).

out resort to court facilities, for handling and disposing of a controversy submitted to arbitration." 244 F.2d 286, 290 (2d Cir.1957) (quoting *In re Katz,* 3 A.D.2d 238, 160 N.Y.S.2d 159, 161 (N.Y.App.Div.1957)).

Unlike the procedure for appeals in traditional litigation, the 1975 Act, as above noted, does not allow for review on the merits and the grounds for vacatur are very limited. *See BFN–Greeley,* 141 P.3d at 940; *see also* Ch. 154, sec. 1, § 13–22–214(1)(a), 1975 Colo. Sess. Laws 576 (listing statutory grounds for vacatur). In contrast, the purpose of the final judgment rule in traditional litigation is "to expedite the final resolution of cases on the merits." *See Disner v. United Bank of Cherry Creek, N.A.,* 780 P.2d 51, 53 (Colo. App.1989). This goal in traditional litigation cannot be achieved under the 1975 Act, which did not allow for review of cases on their merits.

Further, the majority's analogy between "award" and "final decision" in the traditional litigation context, *see* 28 U.S.C. § 1291; C.R.C.P. 54(b), has been rejected by other courts. In *Smart,* the Seventh Circuit declined to apply section 1291 and Fed.R.Civ.P. 54(b) to the arbitration statute. It noted that those provisions are distinguishable because they address a court's jurisdiction over a matter, whereas the statutory provision permitting judicial review of an arbitration award presumes the award is properly before the court. 315 F.3d at 725; *see IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.,* 266 F.3d 645, 650 (7th Cir.2001) (expressing skepticism about the propriety of engrafting Fed.R.Civ.P. 54 onto the arbitration statute, as the FAA does not contain a counterpart to this rule). Consequently, because "no statute corresponding to section 1291 tells the courts when an arbitration award is ripe for judicial enforcement or review," *Smart,* 315 F.3d at 725, courts instead consider, as a practical matter, whether the arbitrator has completed his assignment. *McKinney,* 392 F.3d at 869.

The majority's analogy to traditional litigation also overlooks that arbitration is a creature of contract, which further supports the principle that the intent of the parties and the arbitrator should be considered when determining when an award is appealable. *Smart,* 315 F.3d at 725–26 ("The idea behind arbitration is that it is good to allow parties to contracts to design the method of dispute resolution that is best for them."); *Taubman Cherry Creek Shopping Ctr., LLC v. Neiman–Marcus Group, Inc.,* 251 P.3d 1091, 1095 (Colo.App.2010) (the right of parties to contract encompasses the correlative ability to empower the arbitrator to determine a particular issue); *see also Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.,* 931 F.2d 191, 195 (2d Cir.1991) ("the submission by the parties determines the scope of the arbitrators' authority").

Finally, I am not persuaded by the majority's reliance on two cases from other jurisdictions to support its position that an award is subject to confirmation or vacatur even if a request for attorney fees and costs remains pending. These cases turned on the intent of the parties and the intent of the arbitrator and, in my view, do not support the above proposition as a general rule. *See Crawford Group, Inc. v. Holekamp,* 2007 WL 844819, *3 (E.D.Mo. No. 4:06–CV–1274 CAS, Mar. 19, 2007) (unpublished order) (the parties agreed to bifurcate the merits issue from the attorney fees and related expenses issues; consequently, the court concluded that the arbitrators intended the interim award to be final); *In re Rollins, Inc.,* 552 F.Supp.2d 1318, 1321–22, 1325 (M.D.Fla.2004) (after reviewing the language of the interim award that addressed all submitted issues—including a determination that the respondent was entitled to attorney fees under the contract— the court concluded that the arbitration panel intended to make the interim award final), *aff'd in part and rev'd in part on other grounds sub nom, Rollins, Inc. v. Black,* 167 Fed.Appx. 798 (11th Cir.2006) (unpublished decision).

### B. Application

I conclude the arbitrator's May 27, 2009, "Order RE: Respondent's Motion to Dismiss" was not an "award" that triggered the time limit for judicial review under former section 13–22–214 because the order did not resolve all matters in the case submitted to arbitration. Nor did it evidence that the

arbitrator believed her assignment was complete. Rather, the order evidences just the opposite.

Although the order granted ANA's motion to dismiss Cipoletti's wrongful termination claim, it did not resolve the issue of costs and fees, which was part of the agreed-upon issues submitted to arbitration under the parties' employment agreement. The employment agreement stated: "The ANA shall pay the costs and fees of any arbitration which is initiated under this paragraph 13 *unless the arbitrator determines* that Cipoletti brought an arbitration in bad faith in which case Cipoletti shall pay the arbitration expenses." (Emphasis added.) Thus, the parties specifically contracted to have an arbitrator determine this issue as part of her assignment. *See City & County of Denver*, 939 P.2d at 1361; *Taubman Cherry Creek Shopping Ctr.*, 251 P.3d at 1095 (the right of parties to contract encompasses the correlative ability to empower the arbitrator to determine a particular issue); *see also Domke* § 8.12. The arbitrator expressly recognized that the dismissal order did not resolve the costs and fees matter, and therefore she requested the parties to submit briefs "on both the appropriateness of the request for attorney's fees, and the interpretation of the cost provision of the Employment Agreement."

The record also does not reflect that either the parties or the arbitrator intended the dismissal order to be a final award. The dismissal order itself never states that it is the final resolution of the issues submitted. Nor does the record reflect any intent by the parties or the arbitrator to bifurcate the arbitration into a merits phase and a fees and costs phase. *See Radil v. Nat'l Union Fire Ins. Co.*, 233 P.3d 688, 692 (Colo.2010) ("We look to the plain and ordinary meaning of the terms of the [arbitration] agreement and construe it to effectuate the parties' intent and the purposes of the agreement."). The arbitrator further evidenced that she did not believe the dismissal order was a final award because she subsequently entertained Cipoletti's motion to reconsider her denial of his claim for 457 pension benefits. *See Applehans v. Farmers Ins. Exchange*, 68 P.3d 594, 596–98 (Colo.App.2003) (after an arbitrator

enters an award he or she cannot thereafter modify the substance of the award for reasons other than those recognized by the 1975 Act). Therefore, I conclude the dismissal order was not an "award" triggering the time limit for judicial review.

In contrast to the dismissal order, the arbitrator's July 29, 2009, "Final Award" substantively reflected what was indicated by its title: it resolved all submitted matters. In the "Final Award," the arbitrator not only dismissed Cipoletti's case against ANA, but also resolved the additional costs and fees issue submitted by the parties' arbitration agreement. On this issue, the arbitrator made detailed written factual findings supporting her determination that Cipoletti pursued the arbitration in bad faith. And as noted, she resolved Cipoletti's "renewed argument" on the merits asking for reconsideration of the dismissal order with regard to his entitlement to receive payment from his 457 plan. The arbitrator then concluded the "Final Award" by expressly stating her intent: "This Award is in full settlement of all the claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied." *See Michaels*, 624 F.2d at 413 ("In order to be 'final,' an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them.").

Thus, I conclude that the limitations period for judicial review of any of the arbitrator's rulings did not begin to run until the delivery of the July 29, 2009 "Final Award." Consequently, Cipoletti timely filed an application to vacate both the dismissal order and the final award.

## II. Remaining Issues

Based on my resolution above, I also would conclude that the arbitrator retained jurisdiction after issuing the dismissal order.

## III. Conclusion

I would reverse the district court's order denying Cipoletti's application to vacate the dismissal order as untimely, and remand the

case to the district court to address the substance of the application.